UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **KIONTAE MACK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) |
| | ) |
| **CITY OF CHICAGO; DETECTIVE W. DAVIS;** | ) |
| **STAR NO. 21157; DETECTIVE PAUL P.** | ) |
| **MADERER, STAR NO. 21246; SGT. K.** | ) No. 19 C 4001 |
| **WILLIAMS, STAR NO. 847; DETECTIVE** | ) |
| **DAVID ROBERTS, STAR NO. 20764;** | ) Judge Rebecca R. Pallmeyer |
| **SGT. HOOVER, STAR NO. 2346;** | ) |
| **P.O. BARNES, STAR NO. 8426; P.O. RAY,** | ) |
| **STAR NO. 6817, P.O. JACKSON, STAR NO.** | ) |
| **14986, and P.O. ROBINSON, STAR NO. 8153,** | ) |
| | ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kiontae Mack, charged but ultimately acquitted of murder, alleges that Chicago police officers used unduly suggestive and coercive interrogation techniques, resulting in his falsely confessing to involvement in the shooting, and that the City is liable under the *Monell* doctrine. Mack was held in custody for five years before being acquitted by a jury in June 2017. His amended complaint names nine individual Defendants and alleges claims of wrongful pretrial detention (Count I); denial of due process (Count II); a claim of coerced confession in violation of the Fifth and Fourteenth Amendments (Count III); conspiracy (Count IV); a failure to intervene (Count V); a *Monell* claim against the City (Count VI); and a claim for indemnification of the officers (Count VII). Defendants, the City and nine Defendant officers (Detective Davis, Detective Maderer, Sergeant Williams, Detective Roberts, Sergeant Hoover, P.O. Barnes, P.O. Ray, P.O. Jackson, and P.O. Robinson) have moved to dismiss. Defendant Officers argue that Counts II and III do not state claims for relief, and that the Officers are entitled to dismissal of all Counts in which they are named. The City moves to dismiss the *Monell* claim (Count VI). As explained

here, the Defendant Officers' motion [57] is granted in part and denied in part. The City's motion [61] is denied.

## BACKGROUND

On August 25, 2012, Stephin Williams was shot to death in a parked car on Chicago's south side while eating a meal with a co-worker, Breonna Clausell. (Plaintiff's Amended Complaint [35] ¶¶ 41-46.) Plaintiff Kiontae Mack, a 17-year-old male, was sitting on the steps outside of the Operation PUSH headquarters at 4955 South Drexel Boulevard with other young people when shots rang out. (*Id.* ¶¶ 20, 21, 51, 52.) On hearing gunshots, Plaintiff and other youths scattered. (*Id.* ¶ 52.) "Several minutes later," University of Chicago police detained Mack, and returned him to the scene of the shooting, where he was placed in the custody of Defendant officers. (*Id.* ¶ 53.) One of those officers, Sergeant Hoover, conducted a "show up" with Breonna Clausell, the victim's co-worker who had been in the car with the victim of the shooting. Clausell could not positively identify Mack as an accomplice to the shooting. (*Id.* ¶¶ 41-46, 55-56.)

Mack, who suffers from a learning disability, was taken to Area Central Chicago Police Headquarters located at 51st & Wentworth. (*Id.* ¶¶ 22, 59.) There, his clothing tested negative for gun-shot residue. (*Id.* ¶ 60.) Despite this, and despite his age and limited mental development, Mack was detained for ten to 14 hours in a cold holding cell wearing only a smock, and was subjected to highly suggestive and coercive interrogation techniques by Detectives Roberts and Maderer. (*Id.* ¶ 62.) At the time they conducted the interrogation, Mack alleges, Detectives Roberts and Maderer were aware that there was no physical evidence connecting Mack to the shooting death of Williams and that the individual who fired the gun, Michael Tucker, had not identified Mack as involved in or even present at the shooting. (*Id.* ¶¶ 64, 65.) Although he initially denied involvement and made some equivocal statements, Mack confessed to being Tucker's accomplice. (*Id.* ¶ 69-71.) After approximately five years, on June 16, 2017, the case proceeded to trial, and the jury found Mack not guilty. (*Id.* ¶ 87.)

Plaintiff's acquittal, Defendants contend, requires dismissal of Count II of the complaint, in which he alleges he was denied of his due process right to a fair trial. (Defendant Officer's Motion to Dismiss [58] ¶ 3].) Defendants contend that Count III, in which he alleges his confession was coerced in violation of the Fifth Amendment, must also be dismissed because Mack has not alleged that the confession was used against him in any criminal trial proceeding. (*Id.*) Defendants claim that Sergeant Williams should be dismissed from the case because although Plaintiff named him in the caption of the complaint, no allegations of wrongdoing by Williams appear in the Amended Complaint. (*Id.*) Finally, Defendants argue that Defendants Detective Davis, P.O. Barnes, P.O. Ray, P.O. Jackson, P.O. Robinson, and Sgt. Hoover should also be dismissed from the case because Mack failed to allege particularized conduct on the part of each of the Defendants.

## DISCUSSION

**Legal Standard**

The standards that govern this motion are familiar. A Rule 12(b)(6) motion to dismiss challenges the sufficiency of a complaint. *See* FED. R. CIV. P. 12(b)(6). The Federal Rules require that a complaint contain "a short and plain statement of the claim showing the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2); *Doherty v. City of Chicago*, 75 F. 3d 318, 322 (7th Cir. 1996). The complaint must contain "sufficient factual matter," accepted as true, to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (plaintiff must allege "grounds" for "entitlement to relief," which requires more than labels, conclusions and a formulaic recitation of elements). A claim is plausible when the alleged facts allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. When considering a 12(b)(6) motion to dismiss, the court "construe[s] the . . . complaint in the light most favorable to [Plaintiff], accepting as true all well-pled facts and drawing all reasonable inferences in [the Plaintiff's] favor." *Simpson v. Brown Cty.*, 860 F. 3d 1001, 1005 (7th Cir. 2017). *See Int'l Mktg.,*

3

*Ltd. v. Archer-Daniels-Midland Co.,* 192 F. 3d 724, 730 (7th Cir. 1999) ("[I]t is a truism that fact-finding has no part in resolving a Rule 12(b)(6) motion.").

Though the pleading standard is a generous one, allegations that are nothing more than conclusions are not entitled to deference. *Iqbal*, 556 U.S. at 679-80. The plausibility standard requires that non-conclusory, factual allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *McCauley v. City of Chicago*, 671 F. 3d 611, 617 (7th Cir. 2011). The plausibility standard is not a probability requirement, but asks for more than a sheer possibility that a defendant has acted unlawfully. *Boucher v. Finance System of Green Bay, Inc.*, 880 F. 3d 362, 366 (7th Cir. 2018).

**Count II: Fourteenth Amendment Due Process Claim**

Defendants argue, first, that Mack's acquittal at trial defeats his due process claim as a matter of law. (Defendant Officer's Motion to Dismiss [58] ¶ 3].) Because Mack challenges the fabrication of evidence that led to his pretrial detention, not any deprivation of liberty stemming from a conviction after trial, Defendants contend, his claim of wrongful pretrial detention is governed exclusively by the Fourth Amendment, not the Fourteenth.

Plaintiff urges that the due process claim in Count II does not require a conviction; a police officer who manufactures false evidence has violated due process, he contends, if the evidence is then used to deprive an individual of his liberty "in some way." *Whitlock v. Brueggeman*, 682 F.3d 567, 580 (7th Cir. 2012), quoted in *Anderson v. City of Rockford*, 932 F. 3d 494, 510 (7th Cir. 2019) ("It is well-established that a police officer who manufactures false evidence against a criminal defendant violates due process if that evidence is later used to deprive the defendant of [his] liberty in some way"). More recent case law suggests such a claim arises under the Fourth Amendment only, not under the due process clause of the Fourteenth. In *Manuel v. City of Joliet*, 903 F.3d 667 (7th Cir. 2018), a pretrial detainee brought a § 1983 action, alleging that his arrest and subsequent detention were based on fabricated evidence. Reversing a dismissal of his claim, the Seventh Circuit followed Supreme Court authority in concluding that it is the Fourth

4

Amendment, not the due process clause, that supports a § 1983 claim for unlawful pretrial detention, and that the Fourth Amendment claim did not accrue until the plaintiff was released from custody. See also *Lewis v. City of Chicago*, 914 F.3d 472, 479 (7th Cir. 2019) recognizing that after *Manuel v. City of Joliet*, 137 S.Ct. 911 (2017) (*Manuel I*), and (*Manuel II*), "the Fourth Amendment, not the Due Process Clause, is the source of the right in a § 1983 claim for unlawful pretrial detention."; *see also id*. at 478 ("It's now clear that a § 1983 claim for unlawful pretrial detention rests exclusively on the Fourth Amendment.") (emphasis in original). Applying *Lewis*, courts in this Circuit have dismissed wrongful pretrial detention claims brought under the Fourteenth Amendment's Due Process Clause by persons like Mack, who were acquitted at trial and did not allege any post-trial deprivation of liberty. *See, e.g., Henderson v. Rangel,* No. 18 C 6380, 2020 WL 5642943 (N.D. Ill. Sept. 21, 2020); *Young v. City of Chicago,* 425 F. Supp. 3d 1026, 1033–34 (N.D. Ill. 2019); *Moorer v. Platt*, No. 18 CV 3796, 2020 WL 814924, at *2 (N.D. Ill. Feb. 19, 2020); *Hallom v. City of Chicago*, No. 18 C 4856, 2019 WL 1762912, at *2 (N.D. Ill. Apr. 22, 2019).

Mack contends, as other plaintiffs have, that *Lewis* is no longer good law. He cites *McDonough v. Smith*, 139 S. Ct. 2149 (2019) where, in addressing the question of when a claim for fabrication of evidence accrues, the Supreme Court "assume[d] without deciding" that the Second Circuit had appropriately framed that claim as arising under the due process clause. *Id*. at 2155. Mack contends that assumption casts doubt on the Seventh Circuit's determination that a wrongful pretrial detention claim can be only be brought under the Fourth Amendment. This court is bound by the Seventh Circuit's holding for now. *See Henderson*, 2020 WL 5642943 *3, citing *Mayo v. LaSalle Cty.*, No. 18 CV 01342, 2019 WL 3202809, at *3 n.3 (N.D. Ill. July 15, 2019). But the court concludes it need not address the question in any further depth. Count I, which invokes the Fourth Amendment, will proceed, and discovery on Plaintiff's Fourth Amendment claim would be coextensive with discovery on any claim that his detention violated due process. Following the lead of its colleague in *Culp v. Flores*, 454 F. Supp. 3d 764 (N. D. Ill.

2020) (Feinerman, J.). the court declines to dismiss Count II on the pleadings, but will consider the issue again if presented on summary judgment.

**Count III: Fifth Amendment Coerced Confession Claim**

Defendants contend that Mack's coerced confession claim, Count III, should be dismissed because Mack has not alleged that the confession was used in any "criminal trial proceeding." (Mem. in Supp. of Def. Officers' Motion [58], at 1.) With respect to statements compelled by police, the Supreme Court has said that "it is not until their use in a criminal case that a violation of the Self–Incrimination Clause occurs." *Chavez v. Martinez*, 538 U.S. 760, 767 (2003). Defendants cite several cases for the proposition that a claimed violation of the Fifth Amendment's shield against self-incrimination requires a showing that the confession was used in court against the plaintiff. *See, e.g., Johnson v. Winstead*, 900 F. 3d 428, 434 (7th Cir. 2018) ("a claim for violation of the Fifth Amendment right against compulsory self-incrimination is complete and accrues when an accused's unlawfully obtained inculpatory statement . . . is introduced as evidence at trial. . . ."). Count III adequately alleges a violation of the Fifth Amendment, Plaintiff urges, because he has alleged that his coerced confession was not only used in his criminal proceedings but was the only basis for his criminal prosecution. (Plaintiff's Response to Motion to Dismiss [72] at 4.)

As the court understands Defendants' argument, it is aimed at the sufficiency of the complaint, rather than the merits of this claim as a matter of law. The court does not share Defendants' view that Plaintiff has not alleged use of the coerced confession. He may have been more explicit about when and how the statements were introduced, but Plaintiff has alleged that the "false and involuntary inculpatory statements were the only reason that Plaintiff KIONTAE MACK was prosecuted for in the murder of Stephin Williams." (Plaintiff's Am. Com. [35] at ¶ 101.) In *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1026-27 (7th Cir. 2006), the Seventh Circuit held that a criminal case has begun when a criminal prosecution is commenced *because* of a confession, and that a defendant is compelled to be witness against himself in violation of the

6

Fifth Amendment when his unlawful confession is introduced at a pretrial proceeding.[1] The court also notes that some allegations suggest that other (allegedly fabricated) evidence may have been the basis for Plaintiff's prosecution; he has alleged, for example, that Defendants prepared a false report that Breonna Clausell had identified Plaintiff as the shooter. (Plaintiff's Am. Com. [35] at ¶ 83.) If his coerced confession was not in fact used against him, his Fifth Amendment claim may not survive summary judgment. But the motion to dismiss Count III at this stage is denied.

**Claims Against Sergeant Williams**

Defendants claim that Sergeant Williams should be dismissed from the case because Plaintiff sued him in name only, omitting him from the bulk of the Amended Complaint. (Defendant Officer's Motion to Dismiss [58] ¶ 3.) Indeed, although Sergeant Williams's name appears in the caption of the complaint and in a list of parties (Plaintiff's Am. Com. [35] at ¶ 35), there is no other mention of Sergeant Williams in the complaint. Plaintiff counters he has alleged that all Defendants were involved in a conspiracy to violate his constitutional rights (*id.* ¶ 95) and that his failure to be more specific should be excused because he does not yet have information concerning the conduct of each of the Defendants. (Plaintiff's Response [72] at 9.)

In order to adequately state a constitutional claim against a police officer, a plaintiff "must do more than name [him] in the caption and state he is a police officer." *Lattimore v. Vill. of Streamwood*, No. 17 C 8683, 2018 WL 2183991, at *4 (N.D. Ill. May 11, 2018), citing *Catinella v. County of Cook,* 881 F.3d 514, 517 (7th Cir. 2018); *Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Rule 8 of the Federal Rules of Civil Procedure states that the plaintiff must give a

---

[1] Defendants suggest in a footnote that when and how the statement was introduced may have implications for the timeliness of a Fifth Amendment claim. (See Mem. in Supp. of Def. Officers' Motion [58] at 8 n. 2.) The court is less certain, *see Brown v. City of Chicago,* No. 18 C 7064, 2019 WL 4694685 at *4-5 (N.D. Ill. Sept. 26, 2019), but need not address the question for now.

defendant fair notice of what plaintiff's claim is and grounds upon which it rests. *See* FED. R. CIV .P. 8. "Dismissal of a complaint is appropriate if 'the factual detail . . . [is] so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8.'" *Srivastava v. Daniels*, 409 Fed. Appx. 953, 955 (7th Cir. 2011). When no information about the role a specific defendant plays is offered, and when the body of the complaint does not use a specific defendant's name as part of the allegations, it is unclear to whom Plaintiff is referring. *Leveston v. Moynihan*, No. 17 C 4934, 2017 WL 7693398, at *1 (N.D. Ill. July 13, 2017). Defendants' motion to dismiss Sergeant Williams is granted.

**Group Pleading Doctrine**

Defendants argue that Detective Davis, P.O. Barnes, P.O. Ray, P.O. Jackson, P.O. Robinson, and Sgt. Hoover should be dismissed from the case, for the same reason—that Mack failed to allege particularized conduct by each. With respect to these individuals, Defendants contend that the Amended Complaint relies excessively on "group pleading" in violation of rule 8(a)(2). FED. R. CIV. P. 8(a)(2).

The Seventh Circuit recognizes that allegations may be so sketchy that they do not put defendants on adequate notice of the claims they face. *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC,* 499 F. 3d 663, 667 (7th Cir. 2007). As Plaintiff observes, however, there are circumstances in which it is not possible to specify with individual committed which parts of the alleged misconduct. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F. 3d 816, 821 (7th Cir. 2009). In some cases the plaintiff "may not be able to attribute misconduct to specific individuals where the plaintiff did not know the identity of the offender at the time of the incident." *Rivera v. Lake County*, 974 F. Supp. 2d 1179, 1194 (N. D. Ill. 2013), citing *Rodriguez*, 577 F.3d at 821. The notice pleading standard does not require great specificity. *Erickson v. Pardus,* 551 U.S. 89, 93 (2007). Rule 8 is satisfied, despite some "group pleading," so long as the complaint "provides

sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chicago*, 354 F. Supp. 3d 873, 875 (N.D. Ill. 2019).

Plaintiff contends that his inability to particularize claims to individual defendants is not fatal here, and that to the extent he can identify the individual officer responsible for the misconduct alleged, he has done so. (Plaintiff's Response [72] at 8.) The Amended Complaint does describe the conduct of Defendants Roberts and Maderer with reasonable specificity. (See Am Compl. ¶¶ 53, 54, 62-75.) Those allegations put Roberts and Maderer on notice of the claims being made—the interrogation at the police station on the night of August 25, 2012, coercive questioning, and the Defendants' alleged knowledge of Plaintiff's non-involvement in the murder. With respect to the remaining Defendants, the allegations are far less specific. Plaintiff has alleged that Defendant Hoover conducted the "show up" and knew that Breonna Clausell did not identify Plaintiff. (*Id.* ¶ 54.) He has not alleged any specific further action on Hoover's part, and contrary to the assertion in his brief (Plaintiff's Response [72] at 10-11), has not even identified Hoover specifically in his allegation that "Defendants" prepared a report falsely stating that Breonna Clausell had identified Plaintiff. (*Id.* ¶ 83.) With respect to the remaining Defendants, he has neither described the nature of their involvement in his interrogation or prosecution, nor has he identified specific acts taken by any of them. *Cf. Engel v. Buchan*, 710 F. 3d 698, 710 (7th Cir. 2013) ("reading the allegations sensibly and as a whole, there is no genuine uncertainty as to who is responsible for what"); *Rivera*, 974 F. Supp. 2d at 1194 (noting, in rejecting a "group pleading" objection, that "many of the Complaint's paragraphs identify specific individuals, and many others refer to identifiable subsets of Defendants . . ."); *Horton v. City of Rockford*, No. No. 18 C 6829, 2019 WL 3573566, at *3 (N.D. Ill. August 6, 2019) (concluding that, prior to discovery, a complaint that contains the "what, where, when, and how" is sufficient even if it does not identify "the precise 'who' for every alleged act of misconduct.") .

As this case has been pending for several months, the court suspects discovery may well have amplified Plaintiff's understanding of the events and the role that each Defendant played.

Defendants' motion to dismiss Detective Davis, P.O. Barnes, P.O. Ray, P.O. Jackson, P.O. Robinson, and Sgt. Hoover is granted without prejudice to the filing of an amended complaint.

***Monell* Claim**

In Count VI, Plaintiff alleges that the City of Chicago is liable for the alleged constitutional violations. To state a claim for municipal liability, a plaintiff must plead that one of the following caused constitutional injury: "(1) the enforcement of an express policy of the [municipality], (2) a widespread practice that is so permanent and well settled as to constitute a custom or usage with the force of law, or (3) a person with final policymaking authority." *Wragg v. Vill. of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010) (internal quotation marks omitted); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Plaintiff has alleged that the City failed to promulgate appropriate rules or policies for arrests, detention, and interrogation of individuals, particularly of juveniles and persons with mental disabilities. (Am. Compl. ¶ 115.) He alleges failure to train officers with respect to conducting such arrests and documenting information. (*Id.* ¶ 116, 117.) He alleges that the City failed to develop protocols for training, supervision, monitoring, and discipline of officers. (*Id.* ¶ 118.) All of these failures, Plaintiff contends, were a cause of the violation of his rights. (*Id.* ¶ 119.) He alleges, further, that the City was on notice of the "longstanding and widespread" practice on the part of officers of stopping and seizing individuals, particularly African-Americans, who were not reasonably suspected of criminal activity. (Id. ¶¶ 120-130.) These widespread practices flourished, Plaintiff claims, because Chicago's leaders, including then-Mayor Rahm Emanuel and then-Police Superintendent Eddie Johnson, encouraged or took no action to curb the abuses. (*Id.* ¶ 157.) Plaintiff notes the millions of dollars paid out by the City in false arrest cases between 2008 and 2016; the fact that 90% of arrests in that period were made without a warrant; and that only a very small fraction of arrestees consult with counsel or even use a telephone before interrogations are carried out. (*Id.* ¶¶ 130-133.)

These allegations are nevertheless inadequate, the City urges. The City contends that Plaintiff's allegations do not support the inference that unconstitutional policies were the cause of

his injuries. Further, "Plaintiff's failure to train claim is not supported by any specific factual allegations evidencing similar constitutional violations by untrained employees." (City's Reply Mem. [75], at 6.) Some case law suggests that general allegations of a "code of silence" and failure "to train, supervise, discipline, and control its police officers" are insufficient to state a *Monell* claim, and that a plaintiff seeking to assert such a claim must identify other instances of misconduct similar to what he has experienced in order to show "that there is a true municipal policy at issue, not a random event." *See Jordan v. Klamenrus,* No. 15 C 157, 2020 WL 4547879, *4-5 (N.D. Ill. Aug. 6, 2020) (collecting cases; internal quotations omitted). The Court of Appeals considered this issue in *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), where the plaintiff alleged little more than that he had been arrested on an inadequately-supported warrant "in accordance with a widespread practice of the police department of the City of Chicago." The district court's dismissal of the *Monell* claim was error, the court held: "White was not required to identify every other or even one other individual" who had been the victim of the alleged constitutional violation. *Id.* at 844. Since *White*, many courts have declined to grant motions to dismiss that are premised on the argument that the complaint does not contain allegations beyond those relating to the plaintiff. *Kozbiel v. Sheriff of Cook County*, No. 18 C 4145, 2018 WL 6327003 *3 (N.D. Ill. 2018); *Brainer v. Dart*, No. 16 CV 6013, 2018 WL 1519154, at *7 (N.D. Ill. Mar. 28, 2018); *see also Brown v. Bryant*, No. 15 C 10445, 2018 WL 2201584, at *4 (N.D. Ill. May 14, 2018) ("Although Plaintiff has not alleged any other specific instances where the policy or practice caused constitutional violations, he need not do so in order to survive a motion to dismiss.").

At summary judgment or trial, Plaintiff will have to offer evidence of widespread unlawful practices and its failure to train officers, and demonstrate how those practices and failures caused the alleged wrongdoing in this case. He need not do so at the pleading stage. The City's motion to dismiss Count VI is denied.

## **CONCLUSION**

The Police Officers Defendants' motion to dismiss [57] is granted in part and denied in part. Claims against Defendants Barnes, Jackson, Davis, Hoover, Robins, and Williams are dismissed without prejudice to the filing of an amended complaint. The City's motion to dismiss Count VI [61] is denied. Plaintiff has leave to file an amended complaint on or before January 22, 2021. Parties are directed to submit a joint written status report on or before February 12, 2021.

ENTER:

Dated: November 30, 2020

_____
REBECCA R. PALLMEYER
United States District Judge